379 A.2d 919.

GEORGE KILSEY *vs.* CHUCK WAGON, INC.

NOVEMBER 11, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This is an appeal from a decree of the Workmen's Compensation Commission affirming a trial commissioner's decree that denied and dismissed the employee's original petition for compensation benefits. The commission based that denial on a finding that the employee had failed to prove a loss of earning capacity. The correctness of that finding is the sole issue on appeal.

It appears that the employer, a Rhode Island corporation, is engaged in the business of renting and servicing vending machines. The employee is its president and the owner of one-third of its stock. During 1974 his duties included the general supervision of the employer's affairs, the installation and repair of machines, the servicing of accounts and the collection of money from the machines. For his services he received a weekly salary of $300.

On August 24, 1974 the employee, while installing a vending machine for one of his employer's customers, sustained an injury to his left shoulder when the machine fell from a forklift and pinned him against a wall. Immediately after the incident he suffered severe pain in that shoulder. When self-prescribed treatment of aspirin and hot packs failed to relieve that pain, he contacted his family physician who, after a period of unsuccessful treatment, referred him to an orthopedist. The orthopedist first examined him on November 25, 1974. The diagnosis was acute synovitis of the shoulder with a fusion, and in January 1975 the employee underwent surgery.

At the hearing before the trial commissioner, the or-

thopedist testified that the employee was totally disabled from November 25, 1974 when he first examined him until at least April 3, 1975. Notwithstanding that opinion, the employee had in fact performed his customary duties from the date of his injury until December 14, 1974. In addition, the employer paid him his regular weekly salary less deductions for federal and state taxes during the entire period of his claimed disability.

Concededly, the receipt of post-injury weekly payments equal to pre-injury weekly wages creates a presumption that an employee, although disabled, has not sustained the requisite impairment of earning capacity upon which entitlement to weekly compensation benefits depends. *Peloso, Inc.* v. *Peloso*, 103 R.I. 294, 298, 237 A.2d 320, 323 (1968). That presumption is rebutted, however, if an employee demonstrates that the weekly payments received during disability are an unreliable basis for estimating earning capacity. Thus, for example, the recovery of compensation benefits will not be precluded if the payments received by an employee are intended as a gesture of gratitude by a grateful employer for past services rendered, *Trzoniec* v. *General Controls Co..* 100 R.I. 448, 451, 216 A.2d 886, 888 (1966), or if the payments represent accumulated sick leave and vacation pay, *Robidoux* v. *Uniroyal, Inc.*, 116 R.I. 594, 597-98, 359 A.2d 45, 47-48 (1976).

In this case the employee's attempted rebuttal of the presumption was two pronged. One explanation was that the post-injury payments were not intended as compensation for services rendered, but were made under an arrangement calling for repayment at the rate of $50 per week following the employee's return to full-time work. The employee testified that the substance of that arrangement had been set out in the corporate records and that he had executed a promissory note embodying its terms. That testimony, however, was not substantiated by the production of either the corporate records or the promissory note. Neither

did the employee explain why, if the weekly payments were intended as a loan rather than as payment for services, state and federal taxes were deducted each week.

Relying heavily upon the absence of that substantiating evidence, the commission drew a negative inference and concluded, at least implicitly, that the employee failed to rebut the presumption that the post-injury payments received by him were intended as compensation for services rendered. That finding, though negative, is supported by legally competent evidence and, in the absence of fraud, is conclusive upon this court. *Martines v. Terminal Methods, Inc.*, 101 R.I. 599, 602, 225 A.2d 790, 792 (1967); *Bartlett v. Everett Products, Inc.*, 99 R.I. 476, 479, 208 A.2d 530, 532 (1965).

The second prong of the employee's attempted rebuttal of the operative presumption is his contention that he was so disabled as to be unable to engage in *any* gainful employment. That inability, he argues, and with some merit, required a finding from a commonsensical point of view that the employee, without regard to the payments received from his employer, suffered a complete loss of earning capacity which continued at least until his physical condition so improved that he could rejoin the labor force and recapture part or all of his former earning capacity. *C.f. Suffoletta v. Ricci Drain Laying Co.*, 113 R.I. 114, 116, 319 A.2d 19, 20-21 (1974).

The parties have not brought to our attention any controlling Rhode Island case, and therefore at first blush the employee's contention may seem to be at odds with the rule first enunciated in *Weber v. American Silk Spinning Co.*, 38 R.I. 309, 315, 95 A. 603, 605 (1915) that compensation is awarded only for an injury resulting in an impairment of earning capacity. But as we explained in *Trzoniec v. General Controls Co., supra* at 450-51, 216 A.2d at 888, the term "earning capacity" is a "theoretical concept" which definitionally presupposes an ability or power to earn rather

than wages actually received. Under that definition an employee who is incapable by reason of a work-related injury of obtaining a monetary reward for a reasonable use of his mental or physical powers is entitled to weekly compensation benefits notwithstanding that his employer, irrespective of motive, has seen fit during his period of disability to match his pre-injury earnings.

The North Carolina court stated the principle in earthy terms in *Ashley* v. *Rent-A-Car Co.*, 271 N.C. 76, 84, 155 S.E.2d 755, 761 (1967) when it said:

> "It would strain credulity to hold that an employee who was in a semi-conscious condition for ten weeks after an injury, or confined to the hospital in a cast, was not disabled. *A fortiorari* the act of his employer in paying his wages in full from the date of the injury should not be determinative of the employee's disability and thereby relieve the employer or insurance carrier from liability for hospital and medical care designed to improve his capacity to earn wages. It would be unconscionable to hold that a man who had been so severely burned and disfigured that he is unable to hold a pencil, pick up a water glass, or lift his arm high enough to comb his hair, has not suffered any diminished capacity to earn wages simply because his employer, for an indeterminate period of time, continues to pay claimant the same wages he received before the injury."

The commission, as we read its decision and decree, purported to rely on *Trzoniec* v. *General Controls, Co., supra,* and found that the employee's right to compensaiton benefits hinged on his establishing that the post-injury payments received from his employer were intended as a voluntary gesture of gratitude for past services rendered. In the absence of proof of that fact, it concluded that the employeee had not sustained a loss of earning capacity. In so concluding, it completely ignored the possibility — also

referred to in the *Trzoniec* case — that the employee may have been unable to earn a monetary reward through a reasonable use of his mental or physical powers in which event he would, of course, under this opinion have established an impairment of earning capacity in fact. Perhaps the reason why the commission ignored that theory was that the case was neither presented nor decided under the standards we announce today. In any event, however, the case must be remanded to the commission for a hearing and a factual determination of whether the employee was so disabled as to be unable to do any work whatsoever and, if so, for what period of time. *Robidoux* v. *Uniroyal, Inc., supra* at 599, 359 A.2d at 48; *Banasik* v. *Tupper Co.,* 109 R.I. 192, 198, 283 A.2d 272, 275 (1971); *Saccoccio* v. *Kaiser Aluminum & Chem. Corp.,* 107 R.I. 53, 62, 264 A.2d 905, 909-10 (1970).

The employee's appeal is sustained, the decree appealed from is reversed, and the case is remanded to the Workmen's Compensation Commission for further proceedings consistent with this opinion.

*John E. McCann,* for petitioner.

*Hanson, Curran, Bowen & Parks, E. Howland Bowen,* for respondent.