403 A.2d 262.

Lucien J. Robidoux *vs.* Uniroyal, Inc.

JULY 3, 1979.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.    This is an appeal from a decree of the Workers' Compensation Commission denying compensation. This is the second time this case has been before us. Previously in *Robidoux* v. *Uniroyal, Inc.*, 116 R.I. 594, 359 A.2d 45 (1976) (*Robidoux I*), we had remanded this case to the commission for further proceedings consistent with our directives in that opinion. However, because the subsequent findings of fact made by the commission are inadequate in certain areas to support its decree, we believe that this case must again be remanded.

For clarity we will again outline the pertinent facts. On May 5, 1960, the employee, Lucien Robidoux, broke his wrist and left ankle while working at Uniroyal, Inc. As a result of these injuries, he received compensation based on an average weekly wage of $136. During the following 14 years, Robidoux worked for various employers and apparently had recurring problems with his ankle.

In September 1973, Robidoux began a desk job with the Woonsocket Redevelopment Authority. On or about January 2, 1974, Robidoux entered the hospital for surgery on his left ankle. On or about January 13, 1974, Robidoux left the hospital and went home to recuperate. He returned to work on January 23, 1974. For approximately the next three weeks, Robidoux worked on a part-time basis.[1]

---

[1] He had previously worked an 8-hour day.

At a hearing before the trial commissioner he testified that during this part-time period he would generally work about two hours in the morning and two hours in the afternoon. The rest of the day he spent receiving whirlpool treatments at the hospital or resting his ankle at home. On March 19, Robidoux ceased working and requested a two-month leave of absence for medical reasons. Three days later, for reasons not explained, he requested instead to be laid off for lack of work, which request was granted.[2]

Robidoux admitted that from the day he entered the hospital on January 2, until the day he eventually stopped working on March 19, he continued to receive his regular weekly salary of $200 from the Redevelopment Authority. According to Robidoux, this was accomplished by exhausting his accumulated sick leave and vacation time.

Robidoux petitioned for compensation for three different periods:

1. January 3 to January 23, 1974 — total incapacity;
2. January 23 to March 19, 1974 — partial incapacity;
3. March 19, 1974 and continuing — total incapacity.

The commission, in its first decision on Robidoux's petition, denied compensation. The commission ruled that because Robidoux had received a salary in excess of his preinjury weekly wage, he had not suffered a loss of earning capacity.

On appeal to this court we reversed and remanded. We initially noted that a remand was necessary because the commission had not made specific findings regarding Robidoux's petition for total disability benefits for the period after March 19, when he was no longer employed and receiving salary. We also stated that the commission had erred by assuming that the wages received for sick and

[2]The record is unclear whether he stopped working on March 19 or March 22.

vacation time must necessarily be included in a calculation of earning capacity. For these reasons we remanded for a hearing "to afford the employee an opportunity to establish to what extent, if at all, the payments he received should be exluded in determining his earning capacity." 116 R.I. at 598, 359 A.2d at 48.

On remand to the commission, both counsel were afforded the opportunity to present additional evidence to a trial commissioner. Each declined. The trial commissioner then issued a new decree based on the original record and on his interpretation of our opinion in *Robidoux I*. His decree, however, did not distinguish between the three time periods for which various amounts of compensation — full and partial — were sought. Moreover, the trial commissioner chose to disregard entirely the salary received from January 3 to March 19 in his calculation of earning capacity. Instead, his decree awarded benefits for total incapacity from January 3 to April 17, 1974. From this decree, both the employee and the employer appealed to the full commission; the employer from the entire decree and the employee from the denial of benefits after April 17, 1974.

Rejecting the conclusions of the trial commissioner, the commission ruled that the trial commissioner had not followed the directives of our opinion in *Robidoux I*. The commission stated that additional testimony should have been taken and appropriate findings made concerning the employee's earning capacity during the period he received full salary. Consequently, the commission issued a new decree denying benefits based on the finding that "the petitioner has failed to prove by a fair preponderance of the reasonable evidence that he sustained or suffered any loss of earning capacity commencing January 2, 1974 and subsequent, thereto, as a result of his injury of May 5, 1960."

Before us, the employee contends that the competent evidence in the record does not support this finding. Evaluating this contention, we first examine the commission's decree as it relates to the employee's claim of

total disability from January 3, 1974 to January 23, 1974. During this time period the employee received weekly wages of $200 which were in excess of his preinjury weekly wage of $136. On the fact of this evidence, a rebuttable presumption arose that the employee — whatever his decree of incapacity — had suffered no loss of earning capacity. *Peloso, Inc.* v. *Peloso,* 103 R.I. 294, 298, 237 A.2d 320, 323 (1968); *see Trzoniec* v. *General Controls Co.,* 100 R.I. 448, 450-51, 216 A.2d 886, 888 (1966). *See generally* 2 Larson, *Workmen's Compensation Law,* §57.21 at 10-28 to 10-37 (1976).

In this case, however, there is evidence rebutting this presumption. During at least a portion of the period in question, the evidence is uncontradicted and unimpeached that the employee was hospitalized and unable to work. For at least this period the employee met his burden of proving a loss of earning capacity. Therefore, since the denial of benefits for the period January 3 to January 23 was based on a finding not supported by the evidence in the record — that the employee had failed to have *any* loss of earning capacity — we think it appropriate that the commission reconsider this issue on remand.

We next examine the period for which the employee claims partial incapacity — January 23 to March 19. During this period, the employee worked part time but received full-time wages because of his utilization of vacation and sick-leave benefits. By the employee's own admission, he rendered some services during this part-time period. Thus, a portion of his salary was unquestionably in return for these services. Whether or not these wages exceeded his preinjury earnings is unclear. Moreover, there were numerous unexplained inconsistencies between the testimony of the employee concerning the hours and days he worked during this part-time period and the contents of the employee's earnings record introduced into evidence by the employer for the same period.

The burden was clearly on the employee to prove with some specificity his loss of earning capacity. *Weber* v.

*American Silk Spinning Co.*, 38 R.I. 309, 315, 95 A. 603, 605 (1915). In this instance we think there is ample evidence to support the commission's finding that the employee has failed to meet his burden on this issue. For this reason, we will not disturb this portion of its decree.

Finally, we focus on the denial of the employee's claim for full disability benefits after March 19. In *Robidoux I,* one of the issues remanded was for the commission to make specific findings concerning the employee's petition for benefits during this period. In its latest decision, however, there is little if any mention of the employee's petition for post-March 19 benefits.[3] Rather, the commission *sub silentio* rejected all of the evidence proffered by the employee in support of his petition. Faced with a record thus devoid of specific findings of fact to support the denial of benefits, we are unable to review the decree of the commission competently. Accordingly, it is necessary that we also remand this issue to the commission for further proceedings.

To recapitulate, we remand this case to the commission for resolution of the following issues:

1. for a determination of the employee's degree of incapacity and loss of earning capacity from January 3 to January 23, 1974;

2. for a determination of the employee's degree of incapacity and loss of earning capacity, if any, from March 19 and continuing.

---

[3] The trial commissioner awarded total disability benefits from January 3, 1974, to April 17, 1974. On appeal to the full commission, the employee challenged the April 17 cut-off date. The commission, in its only reference to the post-March 19 claim, stated cryptically: "We feel that the evidence clearly supports the finding that the petitioner failed to prove any incapacity, either in whole or in part, subsequent to April 17, 1974." However, the only apparent significance of this date — legally, medically or otherwise — is that on this date, the employee submitted to the trial commissioner, a medical report dated April 10, 1974, from Dr. A. Louis Mariorenzi, based on his examination of the employee on April 4. Because we are unable to discern any evidence in the record that would support the selection of April 17 as a valid termination date, we do not think that the denial of benefits after that date is supported by valid findings of fact.

We will leave it to the discretion of the commission to determine whether further hearings are necessary to make the appropriate determinations.

The petitioner's appeal is sustained in part, the decree appealed from is reversed to the extent indicated, and the case is remanded to the Worker's Compensation Commission for further proceedings in accordance with this opinion.

*Abedon, Stanzler, Biener, Skolnik and Lipsey, Richard A. Skolnik, Lynette Labinger*, for petitioner.

*Robert K. Argentieri*, for respondent.