404 A.2d 487.

ALBERT ZABBO & SONS, INC. *vs*. ANIELLO ZABBO.

JULY 30, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.   In this workers' compensation proceeding the employee, a plasterer by occupation, sustained a compensable injury when he slipped from a staging and fractured his left wrist. He and his employer entered into a preliminary agreement providing for compensation benefits based on total incapacity. Not long thereafter, the employer filed a petition to review the preliminary agreement alleging alternatively that the employee's incapacity had ended or that he was able to return to light work. A trial commissioner agreed that the employee was no longer totally incapacitated, and he ordered that payments for partial incapacity be made in accordance with the provisions of G.L. 1956 (1968 Reenactment) §28-33-18, as amended by P.L. 1974, ch. 270, §1. On the employer's appeal, the full commission affirmed the trial commissioner's findings of fact and orders.

On its appeal from the full commission's decree, the employer initially argues for reversal on the ground that a copy of a medical report was admitted into evidence, over objection, without being properly authenticated. This report was prepared by Dr. A. Louis Mariorenzi who, on behalf of

the employer's insurer, had examined the employee to ascertain the extent of his incapacity. Even were we to agree with the employer that the admission of that report constituted error, that error would not in itself be ground for reversal of the commission's award if there is in the record other evidence that supports the commission's ultimate finding on the extent of the employee's incapacity. *Litchman* v. *Atlantic Tubing & Rubber Co.*, 100 R.I. 352, 359, 216 A.2d 129, 133 (1966); *see* 3 Larson, *Workmen's Compensation* §79.00 at 15-210-11 (1976).

In this case that other evidence, to be sure, consisted principally of the employee's own testimony that he did not feel capable of returning to work because of subjective symptoms that were at odds with medical opinions based on objective symptoms. Although in these circumstances an employee's testimony may be suspect, it is nonetheless entitled to whatever probative force the factfinder gives it. *Union Smelting & Refining Works* v. *Calhoun*, 101 R.I. 655, 658, 226 A.2d 498, 500 (1967); *Erbe* v. *A.D. Juilliard & Co.*, 81 R.I. 37, 41, 98 A.2d 856, 858 (1953).

Here the full commission—and it is its decree, and not the trial commissioner's that we review—found that the employee was partially incapacitated. It relied on the employee's testimony that he tried to return to work several times but that he "just couldn't do it," that he could not climb staging because he was unable to hold himself up with his left hand, and that after he attempted to do so, he felt like "someone [was] stabbing [him] right through the palm of that hand."

The full commission also relied on the testimony of Dr. Mariorenzi contained in his deposition, instead of on the statements in the report he had prepared for the employer's insurer. In that deposition, he testified that he felt the employee could return to gainful employment, but only if he wore "a leather gauntlet support" on his hand. His qualified opinion taken together with the employee's testimony and the reasonable inferences of which they are susceptible

provide the competent evidence that negates any error that might otherwise exist in the admission of Dr. Mariorenzi's report. Their testimony and those inferences also supply a proper evidentiary basis for the commission's finding that the employee was partially incapacitated. The existence of that basis—absent fraud, and none is alleged—precludes us from disturbing those findings. *See Mazzarella* v. *ITT Royal Electric Division*, 120 R.I. 333, 388 A.2d 4, 7 (1978); section 28-35-30.

Finally, the employer contends that during the entire period of the employee's alleged incapacity not only did it make the weekly payments called for by the preliminary agreement, but it also paid him $250 each week. Consequently, it argues that the total weekly payments received by the employee exceeded those to which he was legally entitled, and that therefore, pursuant to §28-35-45,[1] it

---

[1]General Laws 1956 (1968 Reenactment) §28-35-45 provides:

"At any time after the date of the approval of any agreement or at any time after the date of the entry of any decree concerning compensation, and if compensation has ceased thereunder, within ten (10) years thereafter, any agreement, award, order, finding, or decree may be from time to time reviewed by the workmen's compensation commission, upon its own motion or upon a petition of either party upon forms prescribed and furnished by the commission, after due notice to the interested parties, upon the ground that the incapacity of the injured employee has diminished, ended, increased or returned, or that the weekly compensation payments have been based upon an erroneous average weekly wage. Upon such review the workmen's compensation commission may decrease, suspend, increase, commence or recommence compensation payments in accordance with the facts, or make such other order as the justice of the case may require. No such review shall affect such agreement, award, order, finding or decree as regards money already paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and except that if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of injury, and any payments made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such methods as may be determined by the workmen's compensation commission. Relief on such review shall not be denied an employee or granted an employer or his insurer on the grounds that the employee is incapacitated by any injury or disease which is different from the one for which said employee was paid compensation if the injury or disease incapacitating the employee results from an injury or disease for which employee was paid compensation."

was entitled to credit for the amount of the alleged overpayments against future compensation benefits.

That contention, if at all meritorious, depends initially on the reasons motivating the employer to continue the employee on its payroll during the period of his incapacity. Thus, for example, a weekly payment in an amount equal to salary paid by a sympathetic employer will not be deemed a disability benefit if paid, not with the intention that the payment be in lieu of compensation benefits, but rather as a voluntary gesture of gratitude for past services. *Trzoniec* v. *General Controls Co.*, 100 R.I. 448, 451, 216 A.2d 886, 888 (1966); *see Kilsey* v. *Chuck Wagon, Inc.*, 119 R.I. 443, 379 A.2d 919, 920 (1977); *Robidoux* v. *Uniroyal Inc.*, 116 R.I. 594, 597-98, 359 A.2d 45, 47-48 (1976).

In this case, however, unlike the situation in the *Trzoniec* case, the evidence concerning the underlying reasons for the weekly payments of $250 is not such as to permit us to decide initially whether those payments were intended as compensation or as a gratuity. In the circumstances, fairness to both parties demands that we refrain from passing on the legal issue pending the "resolution of the doubtful factual [issue] by the commission, in whose exclusive province the Legislature has placed that duty and responsibility." *Teschner* v. *Horan*, 118 R.I. 237, 242, 373 A.2d 173, 175 (1977).

The employer's appeal is denied and dismissed in part, the decree appealed from is sustained in part, and the case is remanded to the commission, which shall enter a new decree containing findings concerning the reasons motivating the weekly payments. If the commission finds that the payments were intended to be in lieu of compensation, it should then decide the legal question of the employer's entitlement to credit for excessive past payments.

*Edward P. Sowa, Jr.* for petitioner.

*Raul L. Lovett,* for respondent.