Angela FARIA

v.

CAROL CABLE CO.

No. 85–569–M.P.

Supreme Court of Rhode Island.

June 17, 1987.

Raul L. Lovett, Marc Gursky, Lovett, Schefrin & Gallogly, Ltd., Providence, for plaintiff.

Gregory L. Boyer, Gerard S. Lobosco, Boyer, Reynolds & DeMarco, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This workers' compensation case comes before us on the employee's petition for

certiorari to review a final decree of the appellate commission finding that the employee had failed to prove by a fair preponderance of credible evidence a recurrence of her incapacity for work. We affirm. The facts pertinent to the employee's petition are as follows.

On June 22, 1982, a trial commissioner entered a decree suspending payment of compensation benefits to petitioner, Angela Faria (Faria), for a back injury that she had sustained on June 11, 1980, during the course of her employment as a wire twister with respondent, Carol Cable Company (Cable). The suspension order was based upon the commissioner's finding, at the conclusion of a review hearing, that Faria was capable of resuming, without restriction, her prior duties as a wire twister.

On March 14, 1983, the appellate commission entered a decree affirming the suspension order, and on September 27, 1984, this court entered an order denying and dismissing Faria's appeal from the appellate commission's decree.

On April 6, 1983, Faria filed a petition to review seeking a new award of compensation benefits beginning March 7, 1983, and continuing, on the ground that her incapacity for work had recurred by reason of the effects of her 1980 back injury.

At the review hearing Faria testified that after an April 1982 consultation with the physician who had initially evaluated and treated the back injury, her attorney referred her to Dr. Phillip R. Lucas, an orthopedic surgeon, for a second opinion. Thereafter, she continued as a patient of Dr. Lucas, following his prescribed regimen of out-patient treatments, physical therapy, and pain medication. She further testified that she had not been employed since she left her job with Cable in June 1980 and that she had been spending her days at home resting and refraining from performing most household chores. She was of the opinion that her physical condition and capabilities not only had failed to improve but had deteriorated throughout her course of treatment with Dr. Lucas.

In further support of her petition, Faria submitted a deposition of Dr. Lucas in which he reviewed a series of his examinations of Faria beginning March 25, 1983, and ending May 31, 1984. During the March 25 examination, Dr. Lucas noted that Faria experienced pain upon flexion and extension of her spine but did not demonstrate any signs of a neurological deficit in her lower extremities. It was his opinion that Faria was suffering from a chronic posterior facet syndrome that was causally related to her 1980 back injury. It was also his opinion that the syndrome incapacitated Faria, preventing her return to work.

Doctor Lucas maintained that impression of Faria's condition until a subsequent examination on August 18, 1983, during which Faria complained of increasing leg pain. Detecting signs of a nerve-root compression, Dr. Lucas scheduled further diagnostic procedures. The results of those procedures confirmed a diagnosis of spinal stenosis, that is, a narrowing of the spinal canal due to an enlargement of the spine's joints. It was Dr. Lucas's opinion that the spinal stenosis was causally related to Faria's 1980 back injury and that Faria was totally incapacitated for work.

Continuing his periodic examinations, Dr. Lucas noted an improvement in Faria's condition on January 16, 1984. As of that date and continuing through May 31, 1984, his last examination before testifying, Dr. Lucas was of the opinion that Faria could return to work, provided she avoided tasks involving pushing or pulling and refrained from prolonged sitting or standing.

Although Dr. Lucas testified that he had reviewed the office notes of the physician who treated Faria prior to the entry of the suspension decree, he did not compare Faria's physical condition as described in his testimony with her physical condition at the time of the suspension decree. Nor did he state that his various findings differed from the medical findings at the time of the suspension decree. Furthermore, although Dr. Lucas testified that he first examined Faria on June 28, 1982, he did not reveal the results of that examination or of any subsequent examination before March 25, 1983.

The trial commissioner rendered a decision on April 22, 1985, and entered a decree on May 2, 1985, finding that Faria had proven by a fair preponderance of credible evidence a recurrence of her incapacity for work by reason of the effects of her 1980 back injury. The commissioner awarded Faria compensation for a period of total disability spanning March 8, 1983, through January 16, 1984, as well as a continuing period of partial disability beginning January 17, 1984.

The appellate commission rendered a decision on November 21, 1985, and entered a decree on December 2, 1985, reversing the trial commissioner's finding of recurring incapacity. In its decision the commission stated that to prove a recurrence of her incapacity for work, Faria must establish with evidence of a comparative nature that her condition at the time of the alleged recurrence was worse than her condition at the time of the suspension decree. The commission found that both Faria's testimony and Dr. Lucas's testimony failed as a matter of law to sustain the requisite burden of proof. Faria's testimony failed because it merely embodied her opinion that her condition had worsened; Dr. Lucas's testimony failed because it was not sufficiently comparative to document the alleged deterioration of Faria's condition since the suspension decree.

The question before us is whether the appellate commission erred in finding that Faria failed to present competent evidence to sustain her burden of proof as a petitioner seeking compensation benefits for a recurring incapacity.

■ At the outset, we note that the appellate commission correctly stated Faria's burden of proof. Pursuant to G.L. 1956 (1986 Reenactment) § 28–35–45, an employee may file a petition to review the compensation decree currently suspending previously awarded benefits on the ground that an incapacity for work has recurred by reason of the effects of the original work-related injury and that the current suspension decree should be modified in accordance with the alleged recurrence of incapacity. At the subsequent review hearing, the employee, as the petitioner asserting the affirmative, bears the burden of proving with competent evidence the essential elements of the claim set forth in the review petition. *Coletta v. Leviton Manufacturing Co.*, 437 A.2d 1380, 1383 (R.I. 1981); *see Soprano Construction Co. v. Maia*, 431 A.2d 1223, 1225 (R.I.1981). Specifically, the employee must present competent evidence establishing that an incapacity for work recurred after the suspension decree and that the recurrence of incapacity was causally related to the original and previously compensated injury. *See Martinez v. Bar-Tan Manufacturing Co.*, 521 A.2d 134, 139–40 (R.I.1987); *Coletta*, 437 A.2d at 1383. The rules governing the nature of the evidence required as a matter of law to prove those elements are settled and clearly articulated. First, because a recurrence of incapacity is a relative condition representing a deterioration of the capacity that existed at the time of the suspension decree, proffered evidence, if it is to be deemed competent evidence of a recurring incapacity, must demonstrate that the employee's condition at the time of the alleged recurrence was worse than the employee's condition at the time of the suspension decree. *Martinez*, 521 A.2d at 139–40; *Ryan v. Grinnell Corp.*, 117 R.I. 14, 17, 362 A.2d 127, 129 (1976). Second, because the question of whether a recurring incapacity is causally related to the original injury is often a technical determination, medical evidence is, in the majority of cases, the only competent proof of the necessary causal connection. *See Leviton Manufacturing Co. v. Lillibridge*, 120 R.I. 283, 292, 387 A.2d 1034, 1039 (1978); *cf. Hicks v. Vennerbeck & Clase Co.*, 525 A.2d 37 (R.I.1987) (whether disability is causally related to employment is often complex question requiring medical testimony for its resolution).

■ Faria argues that her testimony is competent to sustain her burden of proof. To support her argument, she advances the rule that an injured employee's perception of incapacity may be afforded whatever probative value the factfinder determines, even though the perception flows from sub-

jective symptoms, such as pain and fatigue, and is contradicted by a medical opinion based upon objective findings. Noting that her testimony is uncontradicted, Faria concludes that the appellate commission erred in dismissing her testimony as insufficient as a matter of law. In reaching that conclusion, she apparently presumes that since her testimony is uncontradicted, its legal sufficiency and competency must be accepted. That presumption is clearly erroneous. The rule that a factfinder may weigh the probative value of an employee's subjective assessment of incapacity, though established, see *Albert Zabbo & Sons, Inc. v. Zabbo,* 122 R.I. 79, 82, 404 A.2d 487, 488 (1979); *Union Smelting & Refining Works v. Calhoun,* 101 R.I. 655, 658, 226 A.2d 498, 500 (1967), has no bearing on the question of whether Faria's testimony is legally sufficient and competent to prove her claim of a recurring incapacity.

Absent corroborating medical testimony, an employee's uncontradicted testimony is competent to prove an incapacity only when a physical injury with symptoms observable to the ordinary person appears reasonably soon after a work-related accident. *Hicks,* 525 A.2d at 42; *Valente v. Bourne Mills,* 77 R.I. 274, 279, 75 A.2d 191, 194 (1950). We are of the opinion that a recurrence of an incapacity causally related to a back injury previously compensated but currently deemed to be no longer incapacitating is a highly technical determination calling for specific expert medical testimony. Accordingly, Faria's testimony, standing alone without the corroboration of competent medical evidence, is insufficient as a matter of law to prove a recurring incapacity causally related to her 1980 back injury.

The success of Faria's petition turns, therefore, on whether the testimony of Dr. Lucas is competent medical evidence of a recurring incapacity. The appellate commission found that Dr. Lucas's testimony was not competent proof of a recurring incapacity because it was not sufficiently comparative to document the alleged deterioration of Faria's condition since the suspension decree. Faria argues that Dr. Lucas's testimony demonstrates a deteriora-

tion of her condition during the course of the series of examinations beginning March 25, 1983, and ending May 31, 1984. Because Dr. Lucas concluded on the basis of those examinations that Faria was totally incapacitated at that time and because the suspension decree was based on a prior finding that Faria was not incapacitated, Faria suggests that a deterioration of her condition since the suspension decree is demonstrated. That suggestion misconceives the nature of the required expert testimony.

As previously noted, the question that an expert must address when asked to render an opinion on whether an incapacity has recurred is whether the employee's condition at the time of the alleged recurrence represents a deterioration of the employee's condition from the time of the suspension decree. The expert's answer must rest on a comparison of the two conditions. Accordingly, an expert who fails to take into account the employee's condition at the time of the suspension decree and who testifies solely to the employee's present condition has not laid the necessary foundation to render an opinion that an incapacity has recurred. *Martinez,* 521 A.2d at 140; *Belanger v. Weaving Corp. of America,* 120 R.I. 348, 351, 387 A.2d 692, 694 (1978); *Ryan,* 117 R.I. at 17, 362 A.2d at 129.

Just this term, we have stated that the rule requiring opinion evidence to be in itself sufficiently comparative so as to document the alleged change in the employee's condition is grounded on the general principle that an expert witness may not testify to a conclusion without laying an adequate foundation for that conclusion. *Martinez,* 521 A.2d at 140. In addition to that rationale, the rule is required to protect the integrity of the suspension decree. That the employee's condition existing at the time of the suspension decree no longer supports a finding of incapacity is res judicata. An expert who renders an opinion that the employee's incapacity has recurred must demonstrate that the opinion rests upon medical findings different from those supporting the suspension decree.

After carefully examining the record, we are of the opinion that Dr. Lucas's testimony fails to demonstrate the comparison that must underlie a competent opinion supporting the alleged recurrence of Faria's incapacity. Although Dr. Lucas stated that he first examined Faria on June 28, 1982, a date shortly after the suspension decree, and that he reviewed the office notes of the physician who had treated Faria prior to the suspension decree, he never rendered an opinion distinguishing Faria's condition at the time of the alleged recurrence from her condition at the time of the suspension decree. It is not possible to discern with any degree of certainty whether Dr. Lucas was of the opinion that his finding of a chronic posterior facet syndrome and his finding of spinal stenosis differed from Faria's previous condition and, if those later findings did differ, that the difference represented a recurrence of incapacity. In light of our well-settled and long-followed rule that expert testimony solely pertaining to an employee's present condition is incompetent to prove a recurrence of incapacity, we are unable to infer a recurrence of incapacity from Dr. Lucas's opinion that Faria was incapacitated as of March 25, 1983.

For the reasons stated, Faria's petition for certiorari is denied and the decree of the appellate commission is affirmed. The writ heretofore issued is quashed. The papers in this case may be remanded to the Workers' Compensation Commission, with our decision endorsed thereon.